UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEREK OWEN BOONE, | ) | Case No. 1:19CV238 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | <u>MEMORANDUM AND ORDER</u> |

Plaintiff Derek Owen Boone ("Boone" or "claimant") has challenged the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying his application for

disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.

§§ 416(i), 423, *et seq*. ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g), and

the parties have consented to the jurisdiction of the undersigned.  The issue before the court is

whether the Commissioner's final decision is supported by substantial evidence and, therefore,

conclusive.  For the reasons set forth below, the Commissioner's final decision is affirmed.

## I.  PROCEDURAL HISTORY

On March 2, 2016, Mr. Boone filed an application for DIB, alleging disability beginning

December 15, 2015.  (R. 10, Transcript ("tr."), at 15, 134-137, 154-156, 157-164.)  His

application was denied initially and upon reconsideration.  *Id*. at 60-70, 71-79, 80-81.

Thereafter, claimant filed a request for a hearing before an administrative law judge ("ALJ").  *Id*.

at 93-94.

The ALJ held a hearing on February 7, 2018.  (R. 10, tr., at 30-57.)  Claimant appeared at the hearing, was represented by counsel, and testified.  *Id.* at 32, 34-51.  A vocational expert ("VE") attended the hearing and testified.  *Id.* at 33-49-56.  On June 11, 2018, the ALJ issued her decision and concluded claimant was not disabled.  *Id.* at 15-25.  On December 17, 2018, the Appeals Council denied Mr. Boone's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  *Id.* at 1-3.  On January 31, 2019, Mr. Boone filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case, and Mr. Boone presents one fundamental issue for the court's review—asserting the ALJ erred when considering his treating providers' opinions.

## II.  PERSONAL BACKGROUND INFORMATION

Mr. Boone was born in 1971 and was 44 years old on the alleged disability onset date. (R. 10, tr., at 23, 154.)  He has a high school education, is able to communicate in English, and has past work as an electronic equipment repairer.  (R. 10, tr., at 23, 34, 51, 157, 159.)

## III.  MEDICAL EVIDENCE SUMMARY[1]

As noted earlier, Mr. Boone applied for DIB benefits on March 2, 2016, alleging disability beginning December 15, 2015.  (R. 10, tr., at 15, 134-137.)  He stated that his physical or mental conditions that limited his ability to work were "RSDCRPS[2] lower extremities; right arm and neck."  *Id.* at 158.

---

[1]  In this section, the court includes only a brief summary of medical evidence, which is not intended to be exhaustive of the administrative record and will be supplemented by additional medical records referenced *infra*.  The court does not detail the hearing testimony, as Mr. Boone has not challenged the ALJ's credibility determinations.

[2]  RSD refers to reflex sympathetic dystrophy; CRPS refers to complex regional pain syndrome.

On September 11, 2014, Rachel Orasko, P.T., completed a form entitled "Seating/wheeled mobility letter of medical necessity". (R. 10, tr., at 597-601.) PT Orasko indicated that Mr. Boone presented with a decreased ability to ambulate due to significant right leg pain. *Id.* at 597. PT Orasko stated that Mr. Boone had significant pain in his right leg due to RSD; that he was limited in his mobility and ability to ambulate due to the pain when any weight was placed on that leg, and that he had had scooters in the past and flipped them several times. *Id.* The physical therapist assessed Mr. Boone's prognosis as "fair to good." *Id.* PT Orasko indicated that a power wheelchair would increase Mr. Boone's mobility around the home, allowing him to get to the bathroom in a timely manner and to complete household chores such as cooking, cleaning, and to provide childcare. (R. 10, tr., at 598, 600.) Sandeep Patel, M.D., signed the form and prescribed a motorized wheelchair on September 24, 2014. *Id.* at 601.

In April 2016, Mr. Boone presented to David Marsh, M.D., an orthopedist, complaining of moderate aching discomfort in his right shoulder and neck with some radiating symptoms. (R. 10, tr., at 20, citing tr., at 406.) The doctor indicated Mr. Boone's active problems were arm pain, foot injury, low back pain, and neck pain. *Id.* Dr. Marsh observed a normal gait at that time, with no acute distress. *Id.* at 409. The claimant had full strength in both arms and his rotator cuff, although there was minor pain with impingement in the rotator cuff and neck. *Id.* Dr. Marsh assessed neck pain, low back pain, right shoulder pain, and cervical radiculopathy, specifically cervical degenerative disc disease with right-sided radiculopathy, and right shoulder impingement. *Id.* The doctor referred Mr. Boone for physical therapy for the cervical radiculopathy, with injections and a prescription for the neck and shoulder pain. *Id.* at 409-410.

3

On May 9, 2016, state agency physician Diane Manos, M.D., completed on initial review a physical residual functional capacity assessment ("RFC").  (R. 10, tr., at 75-77.)  Dr. Manos opined that Mr. Boone was limited to lifting and carrying twenty pounds occasionally, and ten pounds frequently.  *Id.* at 75.  Mr. Boone was capable of standing, walking, or sitting for about six hours of an eight-hour workday.  *Id.*  The doctor opined that the claimant had unlimited ability to push or pull, other than stated for lift and carry.  *Id.* at 76. The claimant could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds.  *Id.* He could occasionally stoop or crawl, and frequently kneel or crouch.  *Id.*  Mr. Boone was limited in his ability to reach overhead with either arm.  *Id.*  Dr. Manos found no need for visual, communicative or environmental restrictions.  *Id.* at 77.

On June 27, 2016, Dr. Patel wrote a "To Whom It May Concern" letter about Mr. Boone's medical conditions.  (R. 10, tr., at 182.)  The letter states:

> Mr. Boone suffers from chronic pain syndrome from multiple factors including reflux [*sic*] sympathetic dystrophy of his right [leg], chronic right shoulder pain, cervical radiculopathy due to degenerative disk disease, and right shoulder impingement syndrome.  This inhibits his ability to gain meaningful employment.  This is a chronic condition and I doubt that we will get much improvement out of his functional status at baseline.

*Id.*  On June 20, 2017, Timothy Plank, D.O., wrote a virtually identical letter on claimant's behalf.  *Id.* at 556.

On reconsideration dated October 4, 2016, state agency physician Maureen Gallagher, D.O., M.P.H., completed a physical RFC assessment.  (R. 10, tr., at 66-68.)  Dr. Sutherland adopted the same exertional and postural limitations that Dr. Manos had assessed.  *Id.* at 67-68. Dr. Sutherland also found no need for visual, communicative, or environmental restrictions.  *Id.* at 68.

On October 13, 2016, Mr. Boone presented for a psychological evaluation by state agency consultant, Thomas M. Evans, Ph.D.  (R. 10, tr., at 550-553.)  The psychologist found that he had no psychological conditions or psychiatric disorders that would impair his ability to work.  *Id.* at 553.

On October 4, 2017, Dr. Plank completed a Physical Medical Source Statement.  (R. 10, tr., at 580-583.)  The doctor diagnosed Mr. Boone with complex regional pain syndrome.  *Id.* at 580.  Mr. Boone's symptoms were intractable pain of the right leg, which was characterized as a chronic burning pain.  *Id.*  Dr. Plank indicated "none" for supporting objective findings.  *Id.*  The doctor indicated that emotional factors (depression) contributed to the severity of claimant's symptoms and functional limitations.  *Id.* at 580, 582.  Dr. Plank did not identify a need for the claimant's legs to be elevated during prolonged sitting, and indicated that claimant would not need a cane or other hand-held assistive device in standing or walking.  *Id.* at 581.

Dr. Plank indicated that Mr. Boone could never lift or carry any amount of weight in a work situation, and he could never twist, stoop, crouch, or climb stairs or ladders.  (R. 10, tr., at 581.)  Although Dr. Plank marked that claimant had significant limitations with reaching, handling, or fingering, he did not include any specific limitations.  *Id.*  Dr. Plank stated that Mr. Boone "needs to sit or lay full time," and could stand 0 minutes before needing to sit down.  He indicated that claimant could stand or walk less than two hours of an 8-hour workday, but that he could sit at least six hours of a workday.  *Id.* at 582.  The doctor stated that claimant did not need a job that permitted shifting positions, nor did he need periods of walking around during the workday.  *Id.*  In addition, Dr. Plank did not indicate that claimant would need to take unscheduled breaks during the day.  *Id.*  The doctor opined that Mr. Boone would be off task

5

25% or more of a typical workday, and he was incapable of even "low stress" work, without explaining the reasons for that conclusion.  *Id.* at 583.  Further, the doctor indicated Mr. Boone's impairments would likely produce good days and bad days, and he would be absent from work more than twenty-eight days per month.  *Id.*

## IV.  ALJ's DECISION

The ALJ's June 11, 2018, decision includes the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.  The claimant has not engaged in substantial gainful activity since December 15, 2015, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3.  The claimant has the following severe impairments:  degenerative disc disease, reflex sympathetic dystrophy of right [leg], chronic pain syndrome, and complex regional pain syndrome of the right [leg] (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except climbing ramps and stairs, occasionally; climbing ladders, ropes, and scaffolds, never; kneel and crouch, frequently; crawl, occasionally; and who has the ability to reach overhead, occasionally with [both arms]; and has the requirement of an aid for standing and walking.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.  The claimant was born on *** 1971, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2015, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 10, tr., at 17, 18, 19, 23-24.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).

Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *DeLong v.*

8

*Commissioner*, 748 F.3d 723, 726 (6th Cir. 2014); *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Mr. Boone presents the following legal issue for the court's review:

> The ALJ found that Plaintiff had the residual functional capacity to perform a range of light exertion work.  This finding is contrary to law because the ALJ failed to evaluate the treating source opinions in accordance with the regulations, Agency authority and Sixth Circuit precedent.

(R. 13, PageID #: 663.)  Therefore, the fundamental issue in this case is the ALJ's consideration and assessment of the medical opinions provided by Mr. Boone's treating providers.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3]  *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often best equipped to provide a complete picture of the individual's health and

---

[3]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20 C.F.R. § 404.1527 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.")  Plaintiff's claim was filed before March 27, 2017.

treatment history.  *Id*.; 20 C.F.R. § 404.1527(c)(2).  The treating physician doctrine requires

opinions from treating physicians to be given controlling weight when the opinion is (1) "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not

inconsistent with the other substantial evidence in the case record."  *Gayheart*, 710 F.3d at 376

(citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  In other

words, treating physicians' opinions are only given deference when supported by objective

medical evidence.  *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan.

15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence

of disability submitted by the treating physician(s).  *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL

162942, at *3.  Those good reasons must be supported by evidence in the case record, and must

be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating

physician's opinion, and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581

F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009)

(quoting SSR 96-2p).

Moreover, the ALJ has the responsibility for reviewing all the evidence in making her

determinations.  20 C.F.R. § 404.1527(e)(2).  An ALJ is required to evaluate all medical

opinions, regardless of source, unless an opinion is a treating source's opinion entitled to

controlling weight.  *Smith*, 482 F.3d at 875 (ALJ must evaluate each medical opinion in the

record); *Walton v. Commissioner*, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999)

(TABLE, text in WESTLAW) (per curiam); 20 C.F.R. § 404.1527(c).  The ALJ must then

determine how much weight to give to each opinion.  *Id*.  State agency doctors are considered

highly-qualified experts in disability evaluation, and the ALJ must consider their evidence.  20
C.F.R. §§ 404.1513a(b)(1); 404.1527(e).  "An administrative law judge may give more weight to
the opinions of examining or consultative sources where the treating physician's opinion is not
well-supported by the objective medical records."  *Dyer v. Social Sec. Admin.*, No. 13-6024,
2014 WL 2609548, at *5 (6th Cir. June 11, 2014) (citing *Gayheart*, 710 F.3d at 376, 379-380).
The ALJ will also consider any statements that have been provided by medical sources, whether
or not based on formal medical examinations.  20 C.F.R. § 404.1545(a)(3).

### A.  Wheelchair Evaluation

Mr. Boone asserts that the ALJ "failed altogether to specify the weight given to the
opinion of Dr. Patel and PT Orasko that a power wheelchair is medically necessary."  (R. 13,
PageID # 673.)  Simply put, he argues that the ALJ erred by not recognizing the statement as an
opinion and referring to it simply as an "evaluation."  *Id.* at 673-674.  Mr. Boone's argument is
not persuasive.

Under the pertinent federal regulations, the wheelchair evaluation form does not
constitute a medical opinion.  The relevant regulation provides:

> Medical opinions are statements from acceptable medical sources that reflect
> judgments about the nature and severity of your impairment(s), including your
> symptoms, diagnosis and prognosis, what you can still do despite impairment(s),
> and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(1).  A physical therapist is not an "acceptable medical source" within
the meaning of the regulations and cannot render a "medical opinion."  *Kilburn v. Commissioner*,
No. 1:17CV603, 2018 WL 4693951, at *11 (S.D. Ohio Sept. 29, 2018); *Sisky v. Colvin*, No.
5:15CV1208, 2016 WL 4418104, at *8 (N.D. Ohio Aug. 19, 2016); *Black v. Commissioner*, No.
5:11CV2770, 2012 WL 4506018, at *7 (N.D. Ohio Sept. 28, 2012); *see also* 20 C.F.R.

§§ 404.1527(a).  Although the form itself is entitled a "Letter of Medical Necessity" (R. 10, tr., at 597), the signature block indicates that the clinical assessment is a "Therapist Evaluation," with the physician's signature merely asserting that the doctor has reviewed the form and the therapist has accurately assessed the client's needs.  (R. 10, tr., at 601.)   The form itself makes it clear that the PT completed the evaluation, even though Dr. Patel signed off on the PT's recommendation.  In addition, the wheelchair evaluation lacks the hallmarks of a medical opinion, because the provider did not include, for example, information indicating what the claimant can still do despite his impairments.  20 C.F.R. § 404.1527(a)(1); *see, e.g.*, *Hanning v. Commissioner*, No. 5:18CV1264, 2019 WL 1980449, at *8 (N.D. Ohio May 3, 2019).

Because a physical therapist is not considered an "acceptable medical source" under the regulations, the ALJ was not required to give any special deference to the physical therapist's evaluation.  *Kilburn*, 2018 WL 4693951, at *11 (citing *Nierzwick v. Commissioner*, 7 Fed. Appx. 358, 363 (6th Cir. 2001)); *Turner v. Colvin*, 2015 WL 5474081, at *5 (E.D. Ky. Sept. 16, 2015). Although the ALJ expressed doubt concerning whether a wheelchair was medically necessary, the ALJ nevertheless found that the evidence supported a limitation requiring an ambulatory aid. (R. 10, tr., at 20; *see also* tr., at 19 (RFC).)  Contrary to Mr. Boone's argument, the court finds that the ALJ did meaningfully assess the evaluation form and sufficiently articulate the reasons, as explained herein, for assessing the PT's evaluation.  *See, e.g.*, *Hanning*, 2019 WL 1980449, at *8 (ALJ not required to give "good reasons" when assessing physical therapist's evaluation).

The ALJ's decision considered the issue of a wheelchair, as well as claimant's testimony that he spends most of his time in bed, that he uses a wheelchair, and rarely uses crutches to walk. (R. 10, tr., at 19.)  He testified he has trouble sleeping, and any touch around his sensitive

areas causes him excruciating pain, even when someone merely bumps into his bed.  *Id.*  He said he started using a cane in 2013 or 2014, because he was falling often, and a doctor recommended that he get something to assist him.  *Id.*  He progressed from a cane to crutches, and then to a wheelchair.  *Id.*  He does not have a ramp at home, so he has to use the power chair, then uses crutches while someone assists him transition.  *Id.*

The ALJ found that while Mr. Boone's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 10, tr., at 20.)  The ALJ noted that Mr. Boone was diagnosed with complex regional pain syndrome and reflex sympathetic dystrophy of the leg, and he testified that he was advised to use an ambulatory aid by his doctor, initially due to a series of falls.  *Id.*  However, the ALJ's decision discounted such testimony after reviewing the medical record and determining that the record documented only three falls; and further, the record regularly noted no recent falls.  *Id.* (citing 9F8; 4F90; 4F74; 3F6; 3F22; 1F 133.)  The ALJ noted that Mr. Boone had a wheelchair evaluation in 2014 that indicated he was able to ambulate slowly with crutches, but his reduced shoulder range-of-motion and strength limited his ability to use a manual wheelchair.  (R. 10, tr., at 20.)  The ALJ acknowledged that a prescription for a wheelchair was given in September 2014, and noted that a physical therapist completed the evaluation form, which was later signed by his physician Dr. Patel.  *Id.*  The ALJ continued:

> However, it is unclear how long his physical therapist had been treating the claimant, and those therapy records are not included (9F9).  Prior records from February 2014 indicated he was bedbound and used a cane, although his records note he was injured dropping a tire on his foot while unloading a truck tire in May 2014, was injured doing some welding in September 2014, and went scuba diving in October 2014 (3F6; 3F19; 3F29; 3F32; 4F64).  Therefore, it is unclear the level

13

to which claimant's wheelchair is medically necessary, even though it is
prescribed; however claimant's ongoing pain in his [leg] support[s] a limitation to
requiring an ambulatory aid.

(R. 10, tr., at 20.)

While Mr. Boone argues that these events documented in the medical record—claimant

unloading a truck tire in May 2014, welding in September 2014, and scuba diving in October

2014—all occurred in 2014 and pre-date the alleged onset date (R. 13, PageID #: 674), the ALJ

found them relevant and inconsistent with other records such the wheelchair evaluation in

September 2014, and the allegation that claimant was bedbound in February 2014.  (R. 10, tr., at

601.)  Given the timeline of events, the fact that the the PT did not provide treatment records,

and Mr. Boone's reliance on the PT's wheelchair evaluation in September 2014, the court cannot

find that the ALJ erred by considering Mr. Boone's documented physical activities before and

after the evaluation and finding they are inconsistent with claimant's alleged physical limitations.

The ALJ also noted that, in April 2016, Mr. Boone presented to David Marsh, M.D., an

orthopedist, complaining of moderate aching discomfort in his right shoulder and neck with

some radiating symptoms.  (R. 10, tr., at 20, citing tr., at 406.)  The doctor indicated Mr. Boone's

active problems were arm pain, foot injury, low back pain, and neck pain.  *Id.*  Dr. Marsh

observed a normal gait at that time, with no acute distress.  *Id.* at 409.  The claimant had full

strength in both arms and his rotator cuff, although there was minor pain with impingement in

the rotator cuff and neck.  *Id.*

Mr. Boone's brief argues that the ALJ had the duty to fully develop the record regarding

the necessity for a wheelchair.  (R. 13, PageID #: 676-677.)  However, it is well established in

the Sixth Circuit that the claimant—not the ALJ—has the burden to produce evidence to support

14

the disability claim.[4] *Hall v. Sec'y of HHS*, 869 F.2d 1490, 1989 WL 16855, at *2 (6th Cir. 1989) (TABLE, text in WESTLAW); *Landsaw v. Sec'y of HHS*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)); *Kafantaris v. Berryhill*, No. 1:17CV568, 2018 WL 1157762, at *23 (N.D. Ohio Feb. 2, 2018), *adopted by*, 2018 WL 1122123 (N.D. Ohio Mar. 1, 2018) (citing cases).

The Commissioner's determination must stand if supported by substantial evidence. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.  The court finds that the ALJ's consideration of PT Orasko's wheelchair evaluation form was supported by substantial evidence, and finds claimant's arguments to the contrary to be without merit.

### B.  Opinions of Dr. Patel and Dr. Plank

Mr. Boone also contends that the ALJ failed to provide good or specific reasons for the weight provided to the opinions of Dr. Patel and Dr. Plank.  (R. 13, PageID #: 677-678.)

As explained above, the treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).  But even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying

---

[4]  Mr. Boone was represented by counsel, thus *Lashley v. Sec'y of HHS*, cited by claimant, is inapposite.  *See* R. 13, PageID #: 677, citing *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1051 (6th Cir. 1983) (discussing ALJ's special duty where claimant appeared without counsel).

specific factors set forth in the governing regulations.[5]  *Id.*; 20 C.F.R. § 404.1527(c).  Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision.  *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).  In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion.  *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

The ALJ's decision addressed the opinions in the providers' one-paragraph "to whom it may concern" letters, as follows:

> Sandeep Patel, MD on June 27, 2016 opined that claimant's impairments inhibits [*sic*] his ability to gain meaningful employment and his conditions are chronic, and he doubts that claimant will have much improvement in his functional baseline (5E/2).  Pursuant to 20 CFR 404.1527 and 20 CFR 416.927, if a treating source opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, we will accord the opinion controlling weight.  However, while Dr. Patel is a treating physician, the undersigned gives this opinion little weight as it opines on a matter reserved for the Commissioner.  It also appears Dr. Patel had ceased to see claimant at some point, possibly in 2014 or 2015, and so it is unclear how familiar Dr. [Patel] was with claimant's current condition at the time of the opinion (4F/46; 6F/14).  Additionally, this letter appears to be a form, as the language is identical to the letter submitted [by] Dr. Plank, DO (6F/3; 5E/2).  Finally, the opinion is not well supported by the record, as claimant indicated he spends most of his day watching television and taking care of his two-year-old son, and wheelchair evaluation indicated that with a power chair he would be able to assist with household chores (5F/3).

> Timothy Plank, DO on June 20, 2017 opined that claimant's impairments inhibits [*sic*] his ability to gain meaningful employment and his conditions are chronic, and he doubts that claimant will have much improvement in his functional baseline (6F/3).  Pursuant to 20 CFR 404.1527 and 20 CFR 416.927, if a treating

---

[5]  The factors are (1) examining relationship; (2) treatment relationship, including the length of the treatment relationship and the frequency of examination, and the nature and extent of that relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other relevant factors.  20 C.F.R. § 404.1527(c)(1)-(6).

source opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, we will accord the opinion controlling weight.  However, while Dr. Plank is a treating physician, the undersigned gives this opinion little weight as it opines on a matter reserved for the Commissioner.  Dr. Plank in February 2017 noted that he was not addressing claimant's chronic pain issues, and appears to have first seen [claimant] only in September 2016 (6F/14; 4F/46).  Additionally, this letter appears to be a form, as the language is identical to the letter submitted [by] Dr. Patel (6F/3; 5E/2).  Finally, the opinion is not well supported by the record, as claimant indicated he spends most of his day watching television and taking care of his two-year-old son, and wheelchair evaluation indicated that with a power chair he would be able to assist with household chores (5F/3).

(R. 10, tr., at 21-22.).  In addition, the ALJ's decision addressed Dr. Plank's October

2017 medical source statement, as follows:

Timothy Plank, DO on October 4, 2017, opined that claimant could never lift or carry in a competitive work situation; never twist, stoop, crouch/squat, or climb stairs; has significant limitations with reaching, handling, or fingering; cannot walk a city block without pain or rest; claimant needs to sit down or lay down full time; cannot stand; can stand/walk less than 2 hours a day and can sit at least 6 hours a day; claimant would be off task 25% or more; and is incapable of even low stress work; and would be out more than 28 days a month (8F/4).  * * * * * However, while Dr. Plank is a treating physician, the undersigned only gives this opinion partial weight.  Dr. Plank in February 2017 noted that he was not addressing claimant's chronic pain issues, and appears to have first seen [claimant] only in September 2016 (6F/14; 4F/46).  In the medical source statement, Dr. Plank noted that the objective findings on which his opinions were based were "none" (8F/1).  In addition, they are not supported by the claimant's medical record.  There are no mentions in claimant's record of difficulties in handling, fingering or feeling, and though claimant's shoulder did have some limitations in range of motion, but medical imaging showed his degenerative disc disease was minimal (2F/5; 1F/7; 1F/135).  Claimant indicated he spends most of his day watching television and taking care of his two-year-old son, and wheelchair evaluation indicated that with a power chair he would be able to assist with household chores (5F/3).  Dr. Plank's assertion that claimant would be out more than 28 days of the month was not supported by his medical records, and that he would be off task 25% of the time was not supported by his consultative examination, as he could spell forward and backwards, could recall three out of three words after a five minute delay, and could recite six digits forward and five backwards (5F/4).

17

(R. 10, tr., at 22-23.)

The court will first address the doctors' virtually identical "to whom it may concern" letters.[6]  The ALJ assigned little weight to Dr. Patel's June 2016 letter and Dr. Plank's June 2017 letter based in part on their statements that Mr. Boone has chronic conditions which inhibit his ability to gain meaningful employment.  (R. 10, tr., at 21-22, citing *id.* at 182, 556.)  The ALJ correctly pointed out that such an opinion—that claimant cannot perform work in a competitive environment— is not entitled to any deference, because it addresses a decision reserved to the Commissioner.  20 C.F.R. § 404.1527(d); *Schuler v. Commissioner*, No. 03-3734, 2004 WL 2030280, at *4 (6th Cir. Sept. 8, 2004).  An opinion that a claimant cannot work is a conclusion on the ultimate issue of disability.  The issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner.  See 20 C.F.R. § 404.1527(d)(1); *Vance*, 2008 WL 162942, at *3; *Walker v. Secretary, HHS*, 980 F.2d 1066, 1070 (6th Cir. 1992).  Accordingly, opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference.  *See* 20 C.F.R § 404.1527(d)(3).

Although each doctor's letter includes only a one paragraph statement, the ALJ considered them and addressed pertinent regulatory factors in Section 404.1527(c).  *See generally Allen*, 561 F.3d at 651.  As an initial matter, the court notes that both opinions state that Mr. Boone has chronic conditions that inhibit his ability to work, but each lacks any indication what he can still do despite his impairments, and neither documents any actual

---

[6]  The claimant argues that these virtually identical letters should weigh in favor of according them greater weight, on the basis that "consistent assessments of independent examiners" are relevant evidence.  (R. 13, PageID #: 679.)

physical or mental restrictions.  *See* R. 10, tr., at 182, 556; *see generally* 20 C.F.R. § 404.1527(a)(1); R. 15, PageID #: 707.  The ALJ considered Mr. Boone's treatment relationship with Dr. Patel and the nature and extent of the treatment relationship—noting that the relationship had a limited nature, it appeared to end in 2014 or 2015, and was not current with the June 2016 opinion.  (R. 10, tr., at 21-22.)  The ALJ also addressed the consistency and supportability of Dr. Patel's opinion with the record as a whole.  *Id.*  Further, the ALJ considered Mr. Boone's treatment relationship with Dr. Plank, and the nature and extent of the treatment relationship, remarking that claimant had been treating with the doctor for about six months and it appeared to be of a limited nature.  *Id.* at 22.  The ALJ also addressed the consistency and supportability of Drs. Patel's and Plank's opinions with the record as a whole, noting for instance that each was inconsistent with claimant's statements that he took care of a two-year old child, and the wheelchair evaluation that he was capable of completing household activities, such as cooking, cleaning and laundry.  *Id.*

The court finds that the ALJ adequately addressed the Section 404.1527(c) factors, and provided good reasons for the little weight accorded to both these one-paragraph statements. The claimant's arguments concerning the doctors' "to whom it may concern" letters are not persuasive, and the ALJ's determinations regarding the weight assigned to them are supported by substantial evidence.

The ALJ's decision also addressed Dr. Plank's October 2017 medical source statement in some detail, as quoted above.  (R. 10, tr., at 22-23; *see generally id.* at 580-583.)  The claimant objects that, although Dr. Plank is a treating physician, the ALJ assigned this opinion only partial weight.  (R. 13, PageID #: 681-685; R. 10, tr., at 23.)  Although Mr. Boone identifies the

evidence which he believes compels a different conclusion than that reached by the ALJ (R. 13, PageID #: 681-685), such evidence does not undermine the ALJ's assessment of Dr. Plank's opinion, which provides good reasons for the weight assigned and addresses several of the Section 1527 factors. As explained above, the Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

The underlying decision demonstrates that the ALJ considered proper factors in determining how much weight to give to Dr. Plank's opinions and ultimately assigning it partial weight. *Francis*, 2011 WL 915719, at *3; *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c). The ALJ considered the treatment relationship (specifically noting Dr. Plank is a treating physician, R. 10, tr., at 23), recognized the length and extent of the relationship (noting the doctor initially saw claimant less than six months earlier, *id.*), and considered the supportability of the extreme limitations opined by Dr. Plank—noting the doctor indicated that "the objective findings on which his opinions were based were 'none'"—as well as specifically finding that the limitations opined by the doctor were not supported by the medical record. *Id.; see generally* 20 C.F.R. § 404.1527(c); *see also Mitchell v. Commissioner*, 330 Fed. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence"). For example, the ALJ noted that Dr. Plank indicated that Mr. Boone has significant limitations with reaching, handling, and fingering, without specifying the extent (R. 10, tr., at 23, 581), yet the ALJ found no support in the medical record for such a limitation on handling and fingering. (R. 10, tr., at 23.) The ALJ also concluded that the opinion was not

consistent with or supported by other record evidence, such as Mr. Boone's testimony, the doctor's own records regarding Mr. Boone's ability to "spell forward and backwards...recall three out of three words after a five minute delay, and…recite six digits forward and five backwards[,]" and the lack of clinical and diagnostic findings to support that he would be absent from work twenty-eight days a month or off-task twenty-five percent of the time. *Id.*  The ALJ identified pertinent regulatory factors and supported the analysis with record citations, including those from the doctor whose opinions were being considered.  Although Mr. Boone points to contrary evidence, this court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *DeLong v. Commissioner*, 748 F.3d 723, 726 (6th Cir. 2014); *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Rather, the Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.  After fully considering the arguments of both parties (R. 13, 15, and 16), and the evidence in the record, the court finds that the ALJ provided good reasons for not providing controlling weight to the opinion of Dr. Plank.  *See, e.g.*, *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407.  The ALJ's reasons for the weight assigned to Dr. Plank's opinion are supported by substantial evidence in the record, and are sufficiently specific to make clear the weight assigned to the treating physician's opinion, and the reasons for that weight.  *See Gayheart*, 710 F.3d 376; *Blakley*, 581 F.3d at 406-407.  Therefore, the court finds Mr. Boone's argument to contrary unpersuasive.

VIII.  CONCLUSION

Mr. Boone's fundamental challenge the to the ALJ's decision asserts that it erred when assessing the opinions from his treating providers.  The court finds that the ALJ's consideration of Mr. Boone's treating provider opinions, and by extension the ALJ's decision, is supported by substantial evidence, as explained herein.  *See Blakley*, 581 F.3d at 406; *Wright*, 321 F.3d at 614. Consequently, the Commissioner's final decision is affirmed.


s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge


Date:  April 15, 2020